**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ANGELEX LTD.,**<br><br>**Plaintiff,**<br>**v.**<br><br>**UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **Case No. 15-cv-56** |

# ANGELEX LTD.'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT


**CHALOS & CO, P.C.**

George M. Chalos, Esq.
Briton P. Sparkman, Esq.
55 Hamilton Avenue
Oyster Bay, New York 11771
Tel: (516) 714-4300
Fax: (516) 750-9051
Email: gmc@chaloslaw.com

**COMES NOW**, Plaintiff, Angelex Ltd. ("Plaintiff" or "Angelex"), by and through undersigned counsel, respectfully submits this Reply Brief in Support of Plaintiff's Cross-Motion for Summary Judgment against Defendant United States of America ("the government") (Doc. 40-1). For the sake of brevity, Plaintiff incorporates the procedural and factual background contained in Plaintiff's Cross-Motion for Summary Judgment as if set forth herein. *See* Doc. 40-1, pp. 1-9.[1] In further support of its Cross-Motion for Summary Judgment, Plaintiff would show as follows:

**PRELIMINARY STATEMENT**

Throughout this action, the government repeatedly (and misleadingly) relies on the same irrelevant arguments to attempt to justify the unreasonable conduct of the United States Coast Guard ("USCG" or "Coast Guard"). In its Response Brief, the government seeks to inflame the Court by rehashing the bad act of one crewmember (*i.e.* - the Chief Engineer), which was clearly unknown and unwanted by Plaintiff. Doc. 45, p. 1. Said another way, it was clear, at all times, that the government's suspicions would never (and did not) support any vicarious charges against Plaintiff Angelex.[2] *See* Doc. 40-4, SMF, ¶ 30.

As this Court has held, Plaintiff's cause of action does not challenge the reasonableness of the initial withdrawal of the departure clearance in the first instance. Rather, the claim seeks a review of what the Coast Guard did (and did not do) after April 19, 2013. *Angelex Ltd. v. United States*, 123 F. Supp. 3d 66, 68 (D.D.C. 2015). Under the circumstances, there cannot be any dispute that the Coast Guard's continued delay of the Vessel was unnecessary and unreasonable. *See* Doc. 40-4, SMF, ¶¶ 6-30.

---

[1] Plaintiff is submitting simultaneously hereto a Reply to the Government's Response to Plaintiff's Statement of Material Facts. Plaintiff respectfully requests that the Court consider the arguments presented therein as incorporated into this Reply in Support of Cross-Motion for Summary Judgment.

[2] Nor did they support any vicarious charges against the Vessel "operator" or person-in-charge of the ship.

The government argues that the *Angelex I* decision issued by District Judge Doumar[3] has no force or effect on the present proceedings. Doc. 45, pp. 3-4. Plaintiff has not attempted to rely on the rulings by District Judge Doumar for collateral estoppel purposes. As before, none of the findings of fact or conclusions of law were challenged by the government on appeal. Rather, the government challenged "subject matter jurisdiction." However, what the government does not say (which it cannot), is that Judge Doumar's factual findings and holdings were wrong. Indeed, Judge Doumar's decision was "spot on" and can (and should) be adopted by this Court.

The facts and evidence in the record make clear Judge Doumar was correct in finding the Coast Guard's actions and corresponding delay of the Vessel were unreasonable under the facts and circumstances of this matter. Judge Doumar's findings have been substantiated and amplified through the evidence and testimony in this case and have never been seriously challenged by the government. At its most basic level, the Coast Guard's unreasonable delay of the Vessel was "simply repugnant to the Constitution." *Angelex Ltd. v. United States*, 2013 U.S. Dist. LEXIS 65846 (E.D. Va. 2013). In over thirty (30) years on the bench, Judge Doumar could "recall seeing no greater disregard for due process, nor any more egregious abdication of the reasonable exercise of discretion." *Id*. These strongly worded findings by an extremely well-regarded, Senior District Judge cannot be summarily dismissed.

## <u>POINTS AND AUTHORITIES</u>

### I. Plaintiff Has Met its Burden for Summary Judgment under Rule 56

Angelex has met its burden and presented undisputed material facts which support judgment as a matter of law in its favor pursuant to 33 U.S.C. § 1904(h) due to the Coast Guard's unreasonable delay of the M/V ANTONIS G. PAPPADAKIS. *See* Doc. 40-4, SMF. Where, as

---

[3] *Angelex Ltd. v. United States*, 2013 U.S. Dist. LEXIS 65846 (E.D. Va. 2013).

here, the government has failed to raise a genuine issue of material fact, the Court can and should enter judgment in favor of the movant Angelex. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317 (U.S. 1986); *see also Winston & Strawn, LLP v. McLean*, 843 F.3d 503 (D.C. Cir. 2016).

## II. 33 U.S.C. 1904(h) and Not 33 U.S.C. 1908(e) Governs the Resolution of Plaintiff's Claims

The statute under which Plaintiff's claims sound speaks in clear, affirmative, and plain terms, *to wit*: "(h) Compensation for loss or damage. A ship unreasonably detained or delayed by the Secretary acting under the authority of this chapter is entitled to compensation for any loss or damage suffered thereby." *See* 33 U.S.C. 1904(h). During the government's appeal of Judge Doumar's *Angelex I* decision, the director of the Department of Justice Civil Appellate Division (AUSA, Douglas Letter), argued repeatedly that the exact recourse available to Angelex was to pursue a claim for damages under 33 U.S.C. 1904(h). During oral argument, AUSA Letter stated:

> In 1904(h), ***they can bring--they can seek compensation for loss or damage. So they--so Congress thought about this, Congress provided***, I'll quote for just a moment, it's not long, 'A ship unreasonably detained or delayed by the secretary acting under the authority of this chapter is entitled to compensation for any loss or damage suffered there by' so if for some reason, forget all of this--this terrific evidence that we have that is the basis of the indictment, let's say that--that didn't exists or the secretary acted wrongly here, the ship can get compensation.

*See* Plaintiff Exhibit 28, Hr'g Tr., p. 15:11-20 (emphasis added). Judge Henry F. Floyd of the Fourth Circuit Court of Appeals agreed, remarking, "It [APPS] does give you a remedy at the end of the day, that is you can seek damages for wrongful actions taken by the Coast Guard and by the secretary. *See* Hr'g Tr., p. 27:16-18; *see also Angelex Ltd. v. United States*, 723 F.3d 500, 509 (4th Cir. 2013) (Wherein the Fourth Circuit was unequivocal that Plaintiff Angelex had a guaranteed safeguard to pursue its claims for damages arising from unreasonable delay through the statute's "after-the-fact" remedy). Plaintiff is not seeking review of the Coast Guard's exercise of its discretion to withdraw the Vessel's departure clearance in the first instance. Rather, Plaintiff

is seeking damages arising from the unreasonable delay of its only fee-earning asset for more than one hundred sixty-five (165) days when the Vessel was on charter to an unrelated party, United Bulk Carriers International, and fully loaded with a dangerous exothermic cargo onboard belonging to another unrelated third party. *See* Doc. 40-4, SMF, at ¶ 4, 8-9. The government's repeated reliance upon the fact that "reasonable cause" existed to believe that criminal and/or civil action may be pursued in this case is immaterial for the purposes of Plaintiff's Cross-Motion for Summary Judgment. Said another way, the result of the underlying case has little, if any, bearing on whether the continued detention of the Vessel was reasonable, which it was not.

The Fourth Circuit Court of Appeals found that there is no initial judicial review of Coast Guard's exercise of what it believed to be in the first instance unreviewable agency discretion in determining the terms for the reinstatement of the Vessel's departure clearance. *See, e.g., Angelex*, 723 F.3d at 509. However, this Court has both the authority and statutory obligation under 33 U.S.C. 1904(h) to review whether the Coast Guard's continuing delay of the Vessel was unreasonable under the facts and circumstances of this matter. The answer, based on the record and undisputed facts in this case, is overwhelmingly "yes." *See* Doc. 40-4, SMF, ¶¶ 6-30.

## III. 33 U.S.C. 1904(h) Mandates the Coast Guard's Continuing Delay of the Vessel be Reviewed by this Court for "Reasonableness" (and Not Whether There Was Reasonable Cause to Detain the Vessel).

The applicable statute provides that Plaintiff is entitled to compensation when its vessel is ***unreasonably delayed***. 33 U.S.C. § 1904(h). The government erroneously argues that Angelex needs to identify and define "reasonable cause."[4] *See* Doc. 45, pp. 8-11. This is not the case. *See*,

[4] The government further argues without any support that since there was evidence supporting "reasonable cause" for the detention in the first place under 33 U.S.C. 1908(e); then the terms of the vessel release should be deemed 'reasonable as a matter of law.' Doc. 45, p. 11. This is not the standard under 33 U.S.C. 1904(h) and the government's argument to the contrary relies on the flawed argument that the end always justifies the means. *Goshorn v. Bar Asso. of District of Columbia*, 152 F. Supp. 300, 305 (D.D.C. 1957).

*e.g.*, *Angelex*, 123 F. Supp. 3d at 81. It is axiomatic that the plain meaning of an unambiguous statute governs, barring exceptional circumstances. *See Rubin v. United States*, 449 U.S. 424, 430, 101 S. Ct. 698, 701-2, 66 L. Ed. 2d 633, 638 (1981). "A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 314, 62 L. Ed. 2d 199, 204 (1979) (citing *Burns v. Alcala*, 420 U.S. 575, 580-581, 95 S. Ct. 1180, 1184, 43 L. Ed. 2d 469, 475 (1975)); *see also Schooner Paulina's Cargo v. United States*, 11 U.S. 52, 60, 3 L. Ed. 266, 269, 7 Cranch 52 (1812) ("In construing these laws, it has been truly stated to be the duty of the court to effect the intention of the legislature; but this intention is to be searched for in the words which the legislature has employed to convey it.").

"Unreasonable" is defined by Merriam-Webster as "not governed by or acting according to reason; exceeding the bounds of reason or moderation." *See e.g.*, www.merriam-webster.com/unreasonable. This is the plain and straight forward meaning of the critical phrase contained in 33 U.S.C. 1904(h) and provides the basis for which this Court should review the Coast Guard's (unreasonable) delay of the Vessel when resolving Plaintiff's Cross-Motion for Summary Judgment. *Watt v. Alaska*, 451 U.S. 259, 267, 68 L. Ed. 2d 80, 101 S. Ct. 1673 (1981) ("We must read the statutes to give effect to each if we can do so while preserving their sense and purpose."). This Court is not required to review the Coast Guard's lengthy and unnecessary delay of the M/V ANTONIS G. PAPPADAKIS through a complicated lens of whether the Coast Guard had "reasonable suspicion", or "reasonable cause", or even "probable cause" to pursue a criminal or civil action; but must determine whether the Coast Guard's decision to detain a fully loaded ship for one hundred sixty-five (165) days, which was neither necessary for the investigation nor available to satisfy any potential fine or penalty was reasonable (or not). Here, it was not!

## IV. The Record Demonstrates that the Lengthy Delay was Unreasonable under the Facts and Circumstances of this Matter.

Plaintiff has presented undisputed material facts (Doc. 40-4, SMF, ¶¶ 6-30; Doc. 40-1, pp. 8-9) which evince that the Coast Guard unreasonably delayed the Vessel. The most egregiously unreasonable demands include, but are not limited to, the following:

1. Imposing numerous nonnegotiable demands wholly unrelated to monetary security for the payment of a fine or penalty, contrary to the requirements of 33 U.S.C. § 1908(e). Doc. 40-4, SMF, ¶¶ 27-28.

2. Requiring Angelex to fund its own prosecution. *See* Doc. 40-4, SMF, ¶¶ 27-28; *United States v. Bevilacqua,* 447 F.3d 124, 127 (1st Cir. 2006)

3. Requiring an express waiver of otherwise available defenses by Angelex; *Id.*

4. Requiring an express waiver of jurisdictional defenses by Kassian (a third party with no ownership or equitable interest in the Vessel; who was not the employer of the crew; and over whom the Court clearly lacked personal jurisdiction). *Id.*, at ¶¶ 1-3; *see also* Doc. 40-7, Bert Dep. 65:4-7.

5. Requiring a bond to be jointly and severally posted by Angelex and Kassian in the excessive amount of USD 2,500,000, which as District Judge Doumar previously found, was "beyond the financial wherewithal" of Angelex (and Kassian). Doc. 40-4, SMF at ¶¶ 20-21.

6. Requiring the posting of an excessive bond which exceeded the maximum fine which could have been imposed upon the Vessel *in rem*, even if the alleged acts were proven in a criminal trial. *Id.*, at ¶ 26.

7. Requiring Kassian to be jointly and severally included in the bond (and other Security Agreement terms), despite the fact that Kassian had no proprietary interest in the Vessel. *Id.*, at ¶¶ 1-4.

8. The Coast Guard's refusal to reconsider the quantum of the bond demanded, despite being provided with substantial and uncontroverted evidence of Angelex (and Kassian's) limited financial resources and ability to post a bond. *Id.*, ¶¶ 9-11.

9. The Coast Guard insistence that unless a USD 2,500,000 bond was jointly and severally posted by Angelex and Kassian, the Vessel was to remain in the district as "security" for a potential fine or penalty without any consideration of the preferred ship mortgage recorded on the Vessel and without any analysis of the priority of liens if the Vessel were to be liquidated and sold at judicial auction. *Id.*, at ¶¶ 21, 26.

10. The government's failure to acknowledge that there was absolutely *no* ability to recover from the Vessel *in rem*, due to the priority of the Vessel's mortgage, despite being advised of same by Angelex and District Judge Doumar. *Id.*, ¶¶ 21, 26; Doc. 40-7, Commander Spolidoro Dep. 60:22-62:21.

11. Unreasonably delaying the Vessel despite the fact that there were no operational deficiencies onboard the M/V ANTONIS G. PAPPADAKIS and no threat to the environment after April 27, 2013. *See* Doc. 40-7, Barnes Dep. 31:17- 32:7.

12. The Coast Guard unreasonable refusal to accept and approve the negotiated amount of security of USD 1,500,000 recommended by the Coast Guard's Fifth District Legal counsel LCDR Andrew Grant, which was agreed by the government's trial counsel and offered during the emergency hearing before District Judge Doumar on May 6, 2013. The offer was rejected without any contemporaneous or reasonable basis. Doc. 40-4, SMF at ¶¶ 14-15.

13. Throughout the detention of the Vessel, the government engaged in a persistent pattern of refusing to reconsider the specific facts and evidence in this case. *Id.*, at ¶¶ 5-25. Instead, the Coast Guard insisted repeatedly upon the imposition of a bond and security terms that could not be met by Angelex. *Id.*

Simply put, any one of these undisputed acts and omissions, among others, were unreasonable and support this Court entering judgment in favor of Angelex and awarding compensation for its losses, damages, and expenses arising from the unreasonable delay and detention of the Vessel, as provided in 33 U.S.C. § 1904(h), in an amount no less than USD 4,179,907.44. Doc. 40-4, SMF, ¶ 33.

## V. The Bond Demand of $2,500,000 Was Unreasonable under the Facts and Circumstances of this Case.

The government erroneously argues that because the Coast Guard had wide discretion to set a bond amount, then its exercise of that discretion in setting the amount must mean that the amount was "reasonable." *See* Doc. 45, p. 12. This specious, circular argument and reasoning should not be countenanced by this Court. The government ignores the undisputed facts in the record which demonstrate that there was ***no*** analysis or contemporaneous consideration by the Coast Guard as to what would be a *reasonable* amount for a surety bond under 33 U.S.C. 1908(e).

It is undisputed that the statutory purpose of the bond is to ensure the payment of a fine or civil penalty. The legislative history confirms that Congress intended the Coast Guard's authorization to request CBP to withhold a vessel's customs clearance was granted for the express purpose to obtain security to ensure the payment of a fine or civil penalty that might be imposed against a vessel *in rem*. *See* House Report No. 96-1224 reprinted in 1980 U.S.C.C.A.N. 4849, 4864. Specifically, the House of Representatives Committee on Merchant Marine and Fisheries, in discussing HR 6665 (the Bill that was subsequently enacted as APPS) stated:

> ***To ensure payment of any fine or civil penalties*** that might be incurred upon completion of criminal proceedings or civil penalty actions, the Secretary of Treasury is required to refuse or revoke clearance to any ship upon the request of the Secretary of Transportation. ***However, clearance may be granted upon filing a bond or other satisfactory security***.

*See* House Report No. 96-1224 *reprinted in* 1980 U.S.C.C.A.N. 4849, 4864 (emphasis added). If the entire purpose of the statute 33 U.S.C. 1908(e) is to obtain a bond or security which *would ensure* the payment of a fine or civil penalties, it cannot possibly be a reasonable exercise of the Coast Guard's authority to demand a bond amount: 1) that bore no relationship to the likely fine to be imposed; 2) bore no relationship to the available equity in the Vessel; 3) bore no relationship to the proper ownership interest in the Vessel; 4) disregarded lien priority and the preferred mortgage on the Vessel; 5) failed to consider the ability of Angelex (or Kassian) to post 100% collateral for the surety bond; and yet continued to delay the Vessel as "security" despite the fact that recovery would be impossible against the M/V ANTONIS G. PAPPADAKIS.

As Commander Laurina Spolidoro from Fifth District Legal testified, there was ***never any*** analysis by the Coast Guard to determine the likely amount of any criminal fine or civil penalty may be imposed and/or whether it would be able to be paid:

Q: …Would you agree with me that it would be reasonable to consider the ability of the owner or operator to post a bond when determining what an appropriate amount for a surety bond should be?

A: I think it would be generous of the Captain of the Port to consider that. I don't think he needs to consider it.

. . .

Q: Don't you think it would be reasonable to conduct an analysis of what - - the prospects for success of corporate criminal liability on a vicarious basis as part of the factors that you look at when demanding a bond?

A: No.

. . .

Q: Wouldn't it be reasonable to take a view at the companies' viability, meaning look at what other income earning assets that the companies may have, if any?

A: I don't think that's required in a surety negotiation.

Q: I'm not asking if its required. I'm asking would it be reasonable as one of the factors that you told us that you consider once you get beyond the template form.

A: Because we don't have the expertise to do that and it takes a long time to do, I don't see how doing that is reasonable in every case.

Q: Okay. Well, you're talking about at the initial detention stage, but this ship sat there for 165 days. Are you telling me that it would be unreasonable to expect a prudent Coast Guard investigator, a Coast Guard lawyer, in 165 days to get experts involved to value the business, if that's what they wanted to do?

A: I'm not sure why we would need to value the business.

*See* Doc. 40-7, Commander Laurina Spolidoro Dep. 47:14 – 51:22

Although Commander Spolidoro referred to requesting assistance from the Department of Justice in analyzing the financial records produced by Angelex (and Kassian), she ultimately confirmed that no one from the Coast Guard requested such assistance or otherwise did *any* analysis of Plaintiff's ability to post a bond. *Id.*, at 52:5 – 53:19. Despite traditional financial records and reports being requested by **<u>and</u>** provided to the Coast Guard Sector Hampton Roads,

no one analyzed them.[5] *See* Exhibit 29; *see also* Doc. 40-7 at Captain John Little Dep., 77:5 – 25; Captain Barnes Dep. 54:19-57:11; Commander Spolidoro Dep. 52:17 – 23.

Most egregious of all, during the May 6, 2013 hearing before District Judge Doumar, the parties reached a negotiated resolution, wherein Angelex (and Kassian) would agree to the non-financial terms and other conditions sought in exchange for the Coast Guard accepting a surety bond in the amount of USD 1,500,000. Doc. 38-2 ¶ 156. This amount was agreed by Lieutenant Commander Andrew Grant, lead counsel for the Coast Guard and was found by Judge Doumar to be reasonable (or at least "reasonable-enough") under the facts and circumstances of this case. However, Coast Guard Headquarters, specifically Admiral Melissa Bert, rejected the USD 1,500,000 bond conditionally offered by Plaintiff without any reasonable basis or other rationale. *See* Doc. 38-3, at Hrg. Transcript 54:17-23, 65:2-6.[6] Again, Admiral Bert denied this at her deposition despite being expressly called out and identified by AUSA DiLauro at the May 6, 2013 hearing before the United States District Court for the Eastern District of Virginia.

> Q. Now, you told us today that you – just now -- that you didn't take this decision with respect to continuing the detention of the PAPPADAKIS in Portsmouth, Virginia.Are you aware that it was represented to the federal judge in the Eastern District of Virginia that the decision rested squarely with you?
>
> A. That is not what the paper said to me when I read the transcript.
>
> Q. Okay. Are you aware that there was a long series of questions to the government attorneys from the judge asking who took the decision?

[5] *See also Angelex Ltd. v. United States*, 2013 U.S. Dist. LEXIS 65846, *12, 25, 2013 AMC 1217 (E.D. Va. 2013) ("The Coast Guard insists that the petitioner post a $2.5 million bond, and no less, as a condition for receiving departure clearance. The petitioners claim that they are financially unable to pay a cash bond or secure a surety bond in that amount,[5] and they have proffered company financial reports and other records in support . . .The record before the Court includes persuasive evidence that a $2.5 million bond— or fine for that matter—***is simply beyond the financial wherewithal of the petitioners***, and that the continued detention of the vessel by withholding its departure clearance will rapidly bankrupt the vessel's owner.").

[6] Although Admiral Bert denied her role in rejecting the USD 1,500,000 agreement. Doc. 40-7, Admiral Bert Dep., pp. 28:1 – 29:11.

[Objection Omitted]

A. I do not recall the words "took the decision" in the transcript.

Q. Are you aware the judge said "the fact that the Coast Guard could reject a settlement by people who are right there and seeing what it is is unbelievable. It just spits out that whomever that person was -- and I haven't found out yet – somebody was going to find out, but maybe we can talk some sense into that person, but since you won't give me that name and I can't find out who it is that makes the decision" – [The judge gets cut off by Mr. Dilauro:] I have a name now, Your Honor.

> THE COURT: You do have a name.
>
> MR. DILAURO: That's correct.
>
> THE COURT: Who is it?
>
> MR. DILAURO: Let me make sure I've got it right. (There was a pause in the proceedings.) It is Captain Melissa Bert, B-E-R-T.
>
> THE COURT: Captain Melissa Burk?
>
> MR. DILAURO: Bert.
>
> THE COURT: B-U-R-K?
>
> MR. DILAURO: No, Your Honor.
>
> THE COURT: B-U-R-C?
>
> MR. DILAURO: No, sir. B-E-R-T.
>
> THE COURT: B-E-R-C?
>
> MR. DILAURO: no. B-E-R-T, as in Tom.
>
> THE COURT: Oh, I'm sorry. B-E-R-T. And that's Captain Melissa Bert, M-E-L-I-S-S-A?
>
> MR. DILAURO: Yes, Your Honor.
>
> THE COURT: All right. That's good. And she has participated in this case?
>
> MR. DILAURO: She's been on the other end of the phone, I presume in Washington, DC."

Q. Now, you didn't understand that to mean that you were the person who took the decision?

A. No.

*See* Doc. 40-7, Admiral Bert Dep., 26:16 – 29:11.

## VI. The Coast Guard Did Not Contemporaneously Consider Kassian's "Status as Repeat Offender", (As it Should Not) Because It is Irrelevant to the Delay of the Vessel.

The government attempts (through the introduction of the late-produced declaration of Lieutenant Commander Andrew Grant) to provide evidence of a distinction in the bond amount demanded between the present matter and other cases such as the M/V THETIS[7] based on Kassian's status as a "repeat offender." *See* Doc. 45, pp. 12-13. This argument is an after-the-fact red-herring designed to distract from the fact that there was no contemporaneous analysis completed by the Coast Guard at all. The Coast Guard's witnesses repeatedly testified that there was no analysis of potential fines, sentencing factors, grouping of counts, and/or any other review of what criminal fine might ultimately be attainable if the prosecution was successful. *See* Point IV, *supra*. The Coast Guard added up three (3) APPS counts for both Angelex and Kassian and then multiplied it by the maximum fine amount per count of USD 500,000 to come up with a demand of USD 3,000,000 (which it was willing to reduce to USD 2,500,000, but no further). There was no analysis of what likely fine may be imposed against Angelex or anyone else if a successful prosecution or penalty was pursued. This is especially evident here where the Coast Guard stated that it considered Kassian's status as a 'repeat offender', but did no analysis of Angelex's unblemished history of repeated port calls in the United States and around the world without incident or deficiency.

Kassian had no equitable interest in the ship and its status was irrelevant. It is respectfully submitted that this Court should reject the government's attempts to reverse-engineer what its trial counsel terms as a plausible explanation of its unreasonable bond demands and delay to the Vessel when there was no contemporaneous analysis performed by the Coast Guard decision makers. *See*

[7] *See United States v. Diana Shipping Services S.A.*, 13-cr-40 (E.D. Va. 2013); Doc. 40-1, pp. 17-18.

Doc. 40-7, Commander Spolidoro Dep. 47:14 – 51:22. As more fully set forth in Plaintiff's Cross-Motion for Summary Judgment, the Coast Guard's requirement for Kassian as the third-party ISM Manager, to be a party to an Agreement on Security (when it had no ownership in the Vessel and the Court lacked personal jurisdiction over Kassian) further undermines the argument that the bond demand of USD 2,500,000 was reasonable in this case. The Coast Guard's senior most officers confirmed through their testimony that there was no basis for personal jurisdiction over Kassian in the criminal case:

> Q. [H]ow does detaining a ship, in your mind's eye, give personal jurisdiction over anybody associated with the vessel?
>
> …
>
> A. It does not confer personal jurisdiction, but it provides -- it does not confer personal jurisdiction.

*See* Doc. 40-7, Admiral Bert Dep., 72:4-11; *see also* Captain Little Dep. 140:8-141:12 (confirming that Kassian had no equitable interest in the Vessel); *Kingston Dry Dock Co. v. Lake Champlain Transp. Co.*, 31 F.2d 265 (2d Cir. 1929) (In admiralty, a party must have at least an 'equitable interest' . . . if not outright title and ownership, in order for the vessel to be attached and seized to enforce a claim against "property" of the defendant).

## VII. *Watervale* is Irrelevant to the Issues in this Case.

The D.C. Circuit's decision in *Watervale Marine Co., Ltd. v. United States*, 807 F.3d 325, 330-31 (D.C. Cir. 2015) is irrelevant to the resolution of the present action. The government cites to the D.C. Circuit's decision in *Watervale* in an apparent attempt to rely on *dicta* from the D.C. Circuit, where the Court stated "[W]e must assume that holding the ships and crew until a civil or criminal proceeding was completed was reasonable." *Id.* at 331. However, it is clear from the record in that matter that the *Watervale* plaintiffs were prematurely challenging the Coast Guard's discretion. The *Watervale* Court agreed with the Fourth Circuit's decision in *Angelex II* that the

Coast Guard has unreviewable agency discretion in the first instance. Here, the question is different; namely, whether the lengthy detention, and the terms demanded for the release of the Vessel and corresponding delay of the M/V ANTONIS G. PAPPADAKIS was unreasonable under the facts and circumstances of the matter. The question and issue in this case was not before the District Court in *Watervale*, and was not raised on appeal before the D.C. Circuit. The D.C. Circuit's assumption that because those plaintiffs did not challenge the reasonableness of the non-financial terms, then they must be 'reasonable' is complete *dicta* and without relevance to this case. In light of the facts and evidence in this case, it is respectfully submitted that this Honorable Court should find that the Coast Guard unreasonably delayed the Vessel and Plaintiff is entitled to compensation for damages pursuant to 33 U.S.C. 1904(h). *Id*.

**VIII. The Coast Guard Routinely Errs in its Exercise of Discretion**

The government has repeatedly argued that because the Coast Guard has wide, unreviewable discretion, all other actions by the Coast Guard must have been "reasonable". *See* Doc. 45, pp. 3-4. Regretfully, the Coast Guard routinely and repeatedly makes mistakes and is held accountable by district courts where, as here, the Coast Guard's actions are unreasonable. *See, e.g.*, *Water Quality Insurance Syndicate v. United States*, 2016 U.S. Dist. LEXIS 177056, (D. D.C. 2016) (overturning Coast Guard's denial of reimbursement of costs for cleaning up an oil spill because the agency's findings in denying the claim were based on factual findings by the Coast Guard that were either incorrect or speculative and the agency's decision relied upon a misapplication of its own defined terms and departed from prior agency precedent); *Water Quality Insurance Syndicate v. United States*, 522 F. Supp. 2d 220 (D. D.C. 2007) (overturning denial of reimbursement based on Coast Guard error in reviewing and analyzing the facts leading to the oil spill); *Movimiento Democracia, Inc. v. Chertoff*, 417 F. Supp. 2d 1343 (S.D. Fla. 2006) (Coast

Guard was unreasonable when it decided that a pier connected to a disused bridge was not US soil for the purposes of an individual being able to stay in the United States and agency decision was overturned); *Hurd v. United States*, 134 F. Supp. 2d 745 (D.S.C. 2001) (Court ruled against Coast Guard in wrongful death suit, as Coast Guard erred in calling off search and rescue operations prematurely leading to the drowning death of a family).

It is respectfully submitted that the Coast Guard is not be entitled to blind deference simply because it believed there was reasonable cause to pursue a criminal action in this case. The facts and evidence in this case demonstrate that the Coast Guard unreasonably delayed the M/V ANTONIS G. PAPPADAKIS for numerous reasons- any one of which clearly supports a finding that Plaintiff is entitled to summary judgment and compensation pursuant to 33 U.S.C. 1904(h).

## CONCLUSION

**WHEREFORE,** for the reasons set forth above and what may be added at oral argument should this Court deem oral argument helpful, Plaintiff Angelex respectfully requests that the Court deny the government's Motion for Summary Judgment and grant Angelex's cross-motion for summary judgment on the grounds that the undisputed material facts demonstrate that the government's lengthy delay of the M/V ANTONIS G. PAPPADAKIS was unreasonable. Accordingly, it is respectfully submitted that this Court should enter judgment in favor of Angelex Ltd. and award compensation for its losses, damages, and expenses arising from the unreasonable delay and detention of the Vessel, as provided in 33 U.S.C. § 1904(h), in an amount no less than USD 4,179,907.44.[8] Doc. 40-4, SMF, ¶ 33. Angelex further requests such other relief as the Court deems just and proper under the facts and circumstances of this case.

[8] Plaintiff respectfully submits that once judgment is entered in its favor, a mediation may be the most efficient way tin which to resolve the matter with finality.

Dated: April 17, 2017
Oyster Bay, New York

Respectfully submitted,

**CHALOS & CO, P.C.**

/s/ George M. Chalos

George M. Chalos
Bar ID 1011459
55 Hamilton Avenue
Oyster Bay, New York 11771
Tel: (516) 714-4300
Fax: (516) 750-9051
Email: gmc@chaloslaw.com

**CERTIFICATE OF SERVICE**

I certify that on April 17, 2017, the foregoing was filed using the Court's CM/ECF filing system, which will send electronic notification of this filing to counsel of record.

/s/ George M. Chalos
George M. Chalos
Bar ID 1011459